Statement.

# Wytheville.

## FINCH AND OTHERS v. CAUSEY AND WOODWARD.

### June 13, 1907.

#### Absent, Keith, P.

1. PRINCIPAL AND AGENT—*Representations of Agent—Admissions after Termination of Agency.*—While a principal is bound by the representations of his agent made while negotiating a lease for him, he is not bound by the admissions of such agent made after the lease has been entered into.

2. CANCELLATION OF INSTRUMENTS—*Fraud—Mistake.*—While mistake as well as fraud furnishes ground for rescinding contracts, an executed contract will not be rescinded in either case unless the fraud be satisfactorily established or the mistake be plain and palpable, and affect the very substance of the thing contracted for.

3. CANCELLATION OF INSTRUMENTS—*Case in Judgment—Defective Title of Lessor—Notice.*—The facts of this case do not warrant a rescission of the executed contract of lease in controversy, even if the lessor did not have complete title to an insignificant part of the leased premises at the time the lease was made. Notice to the husband of the lessor of the defective title and of the lessee's desire or intention to rescind was no notice to the lessor, who had executed the lease in person which the husband had no power to make. No notice was given to the lessor herself until eighteen months after the discovery of the defect, which was then immediately remedied.

4. PRINCIPAL AND AGENT—*Special Agent—Written Authority—Notice.*—A party dealing with an agent acting under written authority, must take notice of the extent and limits of that authority.

Appeal from a decree of the Corporation Court of the city of Newport News. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*S. O. Bland, J. L. Jeffries* and *S. R. Buxton,* for the appellants.

*H. R. Pollard, O. D. Batchelor* and *Maryus Jones,* for the appellees.

BUCHANAN, J., delivered the opinion of the Court.

The appellees, F. A. Causey and W. W. Woodward, instituted this suit against Mrs. M. A. Finch and F. F. Finch, her husband, to rescind a lease of a certain lot in the city of Newport News, on the ground that it was procured by the fraudulent representations of the lessor, Mrs. Finch, and of her husband, who was acting as her agent in making the lease.

It appears that on the 19th of October, 1899, Mrs. Finch made a lease, in which her husband united, to Causey and Woodward of a lot situated in the city of Newport News, on Washington avenue, between '32nd and 33rd streets, being lot No. 25 in block No. 203, as shown on a plat, and described in the lease as fronting on Washington Avenue 25 feet, and running back thence between parallel lines and parallel with 33rd street 95 feet to a five-foot alley to be used in common. The lease was for a term of forty years, at a rent of $420 *per annum* for the first five years, and of $540 *per annum* for the remaining thirty-five years of the term. The lessees bound themselves to erect upon the leased premises within six months from the date of the lease, a three-story brick building, which was to cost $2,500. Mrs. Finch covenanted that she, her heirs, personal representatives and assigns would warrant the title to the property from "all claims thereon under or by the lessor or any person claiming by, from or under her." There are other provisions of the lease not material to the questions involved here. The lease was properly acknowledged and recorded, and the rent for the first year paid.

The ground relied upon by the lessees, as stated in their bill, for a rescission of the lease is, that the lessor, and her husband as her agent, represented to the lessees when the lease was made that the lessor, Mrs. Finch, owned the whole of the leased lot when they knew that the Old Dominion Land Company claimed title to a portion of it, and that they fraudulently concealed such defect from the lessees; that the lot was leased for the purpose of erecting a store-house upon it and the lot adjacent to it, which would cover the whole of both lots, and that the purpose for which they were leasing it was known to the lessor and her husband; that the lessees were arranging and planning to build the store-house thereon when they discovered the said defect in the title, of which they notified Mrs. Finch's husband and agent, and informed him that less than the whole lot would not suit their purposes, and demanded that he should take it back and refund their money, at the same time offering to reconvey the lot to Mrs. Finch; that the husband and agent then informed the lessees that there was some trouble with the Old Dominion Land Company as to a part of said lot, but requested them not to mention the defect to that company, and that he would arrange it either by giving the lessees a clear title or refund their money and take back the lot; that the lessees relied upon the representations that Mrs. Finch was the owner of the whole lot and believed it to be true; that the entire lot was necessary for their purposes, and that they would not have leased it if they had known of the defect of title; that as Mrs. Finch only warranted the title to the leased premises specially they have no remedy at law, and can only go into a court of equity for relief.

Mrs. Finch, in her answer, which was filed as of January 8, 1903, denied all the charges of fraudulent representations made in the bill, and also denied that the Old Dominion Land Company owned any portion of the leased premises, but alleged that since the institution of this suit, she had discovered that that corporation did assert some claim of title to a very small portion of the leased premises which could be procured for a·

nominal sum, and that she had purchased all the right, title and interest of that company in and to that small strip of land claimed by it, which made her title to the whole of the lot indefeasible.

On the hearing of the cause in January, 1906, Mrs. Finch filed in open court a deed from the Old Dominion Land Company, dated May 20, 1902, to R. G. Bickford, the counsel who filed her answer, conveying all its interest in that portion of the leased premises claimed by it, and a deed from Bickford to her conveying the same interest, dated April 15, 1905.

The portion of the leased premises claimed by the Old Dominion Land Company is a very narrow strip of land at one corner of the rear end of the lot, triangular in shape, whose sides are less than $10\frac{1}{2}$ feet in length, whose base is less than one foot in width, and contains less than $5\frac{1}{4}$ square feet. Including that company's claim in the five-foot alley in the rear of the lot, which the lessees have the right under their lease to use in common, the triangle in dispute contains less than $11\frac{1}{2}$ square feet.

It appears that some time in the summer of 1900, probably in June or July, the Old Dominion Land Company discovered that it had an interest in the leased premises, and notified the lessees that it claimed a small portion of the leased premises. The lessees within a month or two thereafter notified the husband of Mrs. Finch of the defect, that they desired that the matter should be settled and would cancel the lease. The lessees proved that it was a matter of common notoriety in the city of Newport News prior to the making of the lease that Mrs. Finch's husband conducted all business negotiations on behalf of his wife in connection with the leasing, management and other disposition of her property, but her power of attorney to her husband, which was recorded in the clerk's office of the Corporation Court of the city of Newport News, shows that while he was authorized to receive and sue for all moneys due his wife, and in his discretion to compromise such claims, he

was not authorized to lease her real estate for a longer period than ten years, or to renew leases for terms exceeding that time. In the fall of 1900 Mrs. Finch and her husband separated, which separation was generally known in the city of Newport News, and after that time he had no further control of her property, except for the collection of certain rents under a decree of court. While it appears that there was some controversy between the Old Dominion Land Company and Mrs. Finch, each of whom owned large boundaries of land adjoining each other, as to their boundary lines, there is nothing in the record to show that Mrs. Finch had any knowledge of the claim of the Old Dominion Land Company to any portion of the leased premises, or of the desire of the lessees to rescind the lease, until the institution of this suit in February, 1902. The lessees proved certain admissions of her husband and agent, that he knew that the Old Dominion Land Company claimed some interest in the leased premises, but as these admissions were not made until after the lease had been entered into, they were not admissible against Mrs. Finch, and were properly excluded by the trial court. *Lake* v. *Tyree,* 90 Va. 719, 721-2, 19 S. E. 787, and authorities cited. Mrs. Finch was, of course, bound by the representations of her husband, her agent, in negotiating the lease. *Crump* v. *Mining Co.,* 7 Gratt. 352, 56 Am. Dec. 116.

It appears that he did represent that his wife was the owner of the whole lot, and that this statement was not true; but it does not appear that he knew that it was false, or that the statement was made with fraudulent intent. Indeed, the evidence tends to prove that it was some months after the lease was made before the Old Dominion Land Company discovered that it had any interest in, or asserted claim to, any part of the leased premises. The defect in the title is so small, being less than 1-460 part of a lot 25 x 95 feet, and of such a character that it is much more reasonable to attribute the representation of the agent, under the facts and circumstances disclosed by the record, to a mistake than to a fraudulent purpose.

But, even though the representation be innocently made, it still may be good ground for rescission. *Grim.* v. *Byrd,* 32 Gratt. 293.

While mistake, as well as fraud, furnishes ground for rescinding contracts, an executed contract will not be rescinded in either case unless the fraud be satisfactorily established or the mistake be plain and palpable and affect the very substance of the thing contracted for. *Thompson* v. *Jackson,* 3 Rand. 504, 15 Am. Dec. 721; *Glassel* v. *Thomas,* 3 Leigh 113; *Leas' Ex'or* v. *Eidson,* 9 Gratt. 278-9; *Rogers* v. *Pattie,* 96 Va., 498, 31 S. E. 807.

It may well be doubted whether the defect in the title to the very small parcel of land claimed by the Old Dominion Land Company, affected the very substance of the thing contracted for, or would have prevented the lessees from erecting substantially the same size building they desired to erect if it had been lost to them; yet, if it be conceded that in this case the lot was leased for a particular size building and that the loss of the small triangle would have defeated that purpose, and therefore affected the very substance of the lease, under the facts of the case, we do not think the lease should be rescinded. By the terms of the lease, the lessees were bound to erect the building provided for by the lease within six months from the date of the lease. The defect in the title was not discovered until after that time had expired, yet nothing had been done towards erecting the building except getting up plans for it; which shows that the lessees were in no great hurry to erect the building. It does not appear that they gave notice to Mrs. Finch of such defect until they instituted their suit for rescission, which was more than eighteen months after they had discovered it, and more than a year after her separation from her husband. Notice to the husband of the lessor of the defect in the title and of the lessees' desire or intention to rescind was not notice to the lessor. She had executed the lease in person, and while her husband had united with her in signing the lease,

it shows upon its face that she was the lessor. The authority that the husband had to act for her, was, by virtue of the power of attorney of record, and that did not authorize him to make contracts for leases of longer duration than ten years; and, of course, gave him no authority to agree to a rescission of a lease which he had no authority to make.

It is well settled that a party dealing with an agent acting under the written authority, must take notice of the extent and limits of that authority. *Steinback* v. *Read, &c.,* 11 Gratt. 281, 286; 62 Am. Dec. 648.

It appears that immediately after the lessor was notified of the Old Dominion Land Company's claim, that interest was contracted for or acquired by her counsel for her benefit so as to fully protect the lessees in their rights, and the lessees notified of that fact.

Under the facts and circumstances disclosed by the record, we are of opinion that the trial court erred in rescinding the lease, that its decree must be reversed, and this court will enter such decree as that court ought to have entered, dismissing the bill.

*Reversed.*