# DECISIONS

## OF THE

# Supreme Court of Florida

## JANUARY TERM, A. D. 1924.

INTERNATIONAL REALTY ASSOCIATES, INCORPORATED, *Appellant*, v. W. D. McADOO, NINA McADOO AND TITLE HOLDING COMPANY, A CORPORATION, *Appellees.*

Opinion Filed January 10, 1924.

1. The power of a court of equity to enforce the cancellation of a contract though well recognized in character and application, is very exceptional. Its purpose is to supplement the powers of law when there exists unusual equity of a settled and well recognized kind.

2. In compelling rescission equity will not interfere with the freedom of contract or substitute itself for legal remedies even though bad and improvident bargains have been entered into. The grounds on which equity interferes for cancellation or rescission are distinctly marked and every case proper for this branch of its jurisdiction is reducible to a particular head.

3. These grounds are primarily, fraud, mistake, turpitude of consideration, and circumstances entitling to relief on the principle of *quia timet;* and generally they do not include inadequacy of price, improvidence, surprise, or mere hardship.

4. The rule is well settled in this country that cancellation or rescission will not be granted solely for breach of contract in the absence of fraud, mistake, undue influence, multiplicity of suits, cloud on title, trust or some other independent ground for equitable interference.

5. An equitable lien is not an estate or property in the thing itself nor a right to recover the thing—that is, a right which

may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus in re*. It is simply a right of special nature over a thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists.

6. There is no law or rule by which courts of equity are required to enforce awards resulting from arbitration at the same time they have many times worked to the material advantage of parties litigant and are looked on with favor by the courts.

This case was decided by Division B.

An Appeal from the Circuit Court for Pinellas County; M. A. McMullen, Judge.

Order affirmed.

*Crockett Owen* and *E. M. Oliver*, for Appellant;

*John F. Burket* and *MacFarlane & MacFarlane*, for Appellees.

TERRELL, J.—W. D. McAdoo and wife, Nina McAdoo, made a contract with International Realty Associates, Incorporated, the provisions of which necessary to be considered here are as follows:

"This Agreement, made and entered into this 22nd day of October, A. D. 1920, by and between W. D. McAdoo joined by his wife Nina McAdoo, of St. Petersburg, Florida, parties of the first part, hereinafter called the sellers, and the International Realty Associates, Inc., a corporation under the laws of the State of Delaware, party of the second part, hereinafter called the buyer.

"WITNESSETH: That for and in consideration of the sum of One Dollar paid by the buyer to the sellers, the receipt of which is hereby acknowledged, together with the covenants and agreements hereinafter set out, the respective parties to this instrument agree as follows:

"FIRST. Said buyer hereby contracts to handle the development and sale of the property of the sellers lying in Pinellas County, Florida, known as St. Petersburg Beach, and more particularly described in paragraph third of this agreement, using its best efforts and facilities to realize the largest amount possible for said property, and to accomplish same as expeditiously as practicable.

"SECOND. Said seller agrees to deliver good and sufficient warranty deeds to the portions of the said property as sold from time to time by the said buyer, when requested by it and deeds duly prepared are presented for execution, the property so sold to be free from incumbrance, and the grantee in such deeds to be supplied and named by the said buyer, or its duly authorized agents."

The contract further describes, in detail the lands to be sold, provides for a full and complete abstract showing a merchantable title thereto in the seller, conveys certain personal property to the buyer and authorizes the buyer to lease certain property of the seller. The contract is for a period of seven years with the right to terminate same on the part of sellers on conditions therein named. The price, terms and conditions of sale are also provided for as is the manner of disposition of the receipts.

It is further provided that the buyer shall pay all taxes, assessments, insurance and carrying charges against said property, use certain receipts for improving and remodeling buildings thereon, make other expenditures for permanent improvements and make settlement with the seller every thirty days or oftener if desirable. No sales can be made to negroes or Cubans, the said contract to be

binding on the heirs, executors, administrators, successors or assigns of the parties thereto, and the seller agrees to at once form a holding company or corporation to take title to property covered by said contract for the purpose of executing deeds and doing such other things as may be necessary to carry out the purpose and intent of the same. The books and accounts of the buyers to be at all times subject to the inspection of the seller.

Paragraph 15 of said contract is as follows: "Should any question arise as to the interpretation of this contract between the parties hereto, the said matter of dispute shall be referred to three arbitrators, one selected by each of the parties to this contract, and a third to be selected by the first two, and the decision of any two of said arbitrators to be binding upon all parties to this contract. Should either party fail or refuse to appoint an arbitrator within ten days after written notice of disagreement and request for arbitration, then it is agreed by the parties hereto that the Judge of the County Court of Pinellas County, shall appoint such arbitrator for and on behalf of such party, which such arbitrator shall for all intents and purposes act the same as though appointed by such delinquent party."

On November 11, 1921, International Realty Associates, Incorporated, the buyers, complainant below, filed their bill in equity praying (1) That said contract be rescinded and cancelled; (2) For an equitable lien on all the property described in said contract for various amounts enumerated in the bill of complaint, and (3) For an accounting. The reasons for the prayer as stated in paragraphs 11 and 12 of the said bill of complaint are as follows:

"11. That on the 28th day of October, 1921, orator presented to said W. D. McAdoo deeds to Lots 1, 3 and 6, Block 86, Lot 8, Block 43, Lot 9, Block 44, Lots 7 and 9,

Block 45 and Lot 7, Block 57, St. Petersburg Beach, according to the plat, original of Exhibit C, and requested him to execute same so that they might be delivered to the purchasers, this request was repeated on the 29th day of October, the 31st day of October, the 1st day of November, and on the 4th of November; that on the 10th of November orator tendered to said McAdoo the cash, lawful money of the United States for his percentage of the cash, received from the sale of the eight lots above described in this paragraph, and tendered him mortgages for which he might select his percentage of such mortgages; that on each occasion when such request was made said. W. D. McAdoo failed and refused to deliver any of said deeds; that on the last date when such request and tender were made he did not accept such tender and did not deliver said deeds, whereupon orator informed said McAdoo that such failure to deliver said deeds was a breach of the contract between them.

"12. Orator avers that by reason of said breach of contract by said McAdoo it has the right to rescind said contract, original of Exhibit B, and it does hereby elect to rescind the same, and orator hereby offers and agrees to restore to said W. D. McAdoo all of the subject matter of said contract which has not been sold in accordance therewith and to make defendants a release of record from said contract upon the payment by said defendants to orator of the amount expended by it for permanent improvements, the amounts it advanced to the purchaser of the three lots 1, 3 and 6, in Block 86, for building thereon, the additional amount of $4,500.00 expended by said purchaser in erecting the buildings on said three lots; the amount orator is liable for on account of the buildings on the five lots above described amounting to $20,000.00; the amount of profits on the sale of said eight lots which orator will lose on account of the breach of said contract

by said McAdoo, the amount of profits from sales and con-
tracts which orator has made up to the time of the breach
of said contract by said McAdoo, the amount which orator
has expended in preparation for the sale of said property
and the profits which orator would have made by the sale
of the said property under the said contract, all of which
is lost to orator by reason of the breach of said contract
by said McAdoo."

The bill of complaint in addition to the foregoing and
the formal parts outlines the history of the transaction,
the manner of platting, sale and disposition of the lands
as described in the contract, and makes the contract a part
of the said bill of complaint.

A demurrer to the bill was sustained, the bill was dis-
missed without prejudice, and appeal taken to this court.

The first question presented for our consideration may
be stated as follows: Have complainants made a show-
ing in their bill that would authorize a court of equity
to cancel and rescind the contract described herein?

The power of a court of equity to enforce the cancella-
tion of a contract though well recognized in character and
application, is very exceptional. Its purpose is to supple-
ment the powers of the courts of law when there exists
unusual equity of a settled and well recognized kind. In
compelling rescission equity will not interfere with the
freedom of contract or substitute itself for legal remedies
even though bad and improvident bargains have been en-
tered into. The grounds on which equity interferes for
cancellation or rescission are distinctly marked and every
case proper for this branch of its jurisdiction is reducible
to a particular head.

These grounds are primarily, fraud, mistake, turpitude
of consideration and circumstances entitling to relief on
the principle of *quia timet;* and generally they do not in-
clude inadequacy of price, improvidence, surprise, or

mere hardship. Promises, honestly made, which the promisor cannot fulfill, do not furnish sufficient grounds for vacating a contract based thereon; but mutual mistake, or false representations as to material facts which constitute an inducement to the contract and upon which the party had a right to rely, will give equity jurisdiction. As in the case of specific performance, relief by way of cancellation lies within the sound discretion of the court, to be exercised according to what is reasonable and proper under the circumstances of each particular case; and the court will, in granting relief, impose such terms as it deems the real justice of the case to require, the maxim being emphatically applied, he who seeks equity must do equity. In a proper case relief may be obtained not only at the instance of a person who executed the instrument complained of, but even by a stranger to the transaction if his legal or equitable rights are affected thereby. Thus, where a deed or other instrument has been procured by undue influence, if it be not ratified by the party making it after the undue influence has ceased to operate, it may be set aside after his death at the suit of those who succeed to his rights. 4 R. C. L. p. 487, par. 2; 4 Pomeroy's Eq. Jur. (4th ed.) §1377, p. 3282; Griffin v. Orman, 9 Fla. 22; Hirschman v. Hodges, O'Hara & Russell Co., 59 Fla. 517, 51 South. Rep. 550; Harrington v. Rutherford, 38 Fla. 321, 21 South. Rep. 283; Stephens v. Orman, 10 Fla. 9, text 86.

The rule is well settled in this country that cancellation or rescission will not be granted solely for breach of contract in the absence of fraud, mistake, undue influence, multiplicity of suits, cloud on title, trust or some other independent ground for equitable interference. Harrington v. Rutherford, 38 Fla. 321, 21 South. Rep. 283; Rutland Marble Co. v. Ripley, 10 Wall. (U. S.) 339; Dixie Cotton Picker Co. v. Bullock, 188 Fed. Rep. 921; Birming-

ham Warehouse & Elevator Co. v. Elyton Land Co., 93 Ala. 549, 9 South. Rep. 235; Lawrence v. Gayety, 78 Cal. 126, 20 Pac. Rep. 382; Shaw v. Horner, 7 Colo. App. 83, 42 Pac. Rep. 689; Madison v. Clark, 165 Ill. App. 228; Burt v. Bowles, 69 Ind. 1; Parsons v. Crocker, 128 Iowa 641; 105 N. W. Rep. 162; Long v. Woodman, 58 Me. 49; Moore v. Cross, 87 Tex. 557, 29 S. W. Rep. 1051; Rogers v. Pattie, 96 Va. 498, 31 S. E. Rep. 897; Whitman v. Aldrich (Tex. Civ. App.) 157 S. W. Rep. 464; Forster v. Flack, 140 Wis. 48, 121 N. W. Rep. 890.

In this case the only ground urged in the bill of complaint for rescission is ''breach of the contract'' by appellees in that they refused to execute certain deeds. No fraud, undue influence or advantage, mistake, trust, cloud on title, multiplicity of suits, inability of appellees to respond in damages, or in fact any other independent ground for equitable relief is set up. Appellant and appellees entered into an agreement whereby appellant was to sell certain lands for appellees. Appellant was not clothed with title to the lands involved. All parties to the agreement traded on equal terms and had equal opportunity to know the whole facts affecting the transaction. In the light of these facts and the law as herein stated, we find no error in the order of the chancellor refusing cancellation.

After cancellation appellant prays that an equitable lien be decreed to exist in its favor against all the lands of appellees described in the bill of complaint.

An equitable lien may be defined as follows: ''An equitable lien is not an estate of property in the thing itself nor a right to recover the thing,—that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus in re*. It is simply a right of a special nature over a thing, which constitutes a charge or encumbrance upon the thing, so that the very thing

itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the encumbrance.'' Peck v. Jenness, 7 How. (U. S.) 612, 620; 3 Pomeroy's Eq. Jur. (4th ed.) §1233, p. 2958.

To authorize a court of equity to decree an equitable lien to exist in favor of the appellant as against the appellees, the bill of complaint must on its face show that one or more of the grounds for rescission as herein stated exist in favor of the appellant or that appellant innocently and in good faith, through mistake as to the true condition of title made improvements or repairs on appellees' lands that permanently increased their value or some other good and sufficient reason cognizable by a court of equity must be presented. We have examined the bill carefully and do not think it sufficient basis for an equitable lien. Secs. 1238 to 1243 inclusive of 3 Pomeroy's Eq. Jur. (4th ed.); 17 R. C. L. §§13, 14, p. 604.

The primary questions, viz. that of rescission or cancellation, and that of decreeing an equitable lien to exist in favor of appellant against appellees being in this manner disposed of, there remains no basis in the record for an accounting.

It is further not apparent on consideration of the whole record that the chancellor abused his discretion in dismissing the bill of complaint.

Paragraph 15 of the contract which is here sought to be cancelled provides for arbitrating any questions that may arise with reference to the interpretation thereof. It is not made to appear that the difference between the

parties hereto arose over the interpretation of the contract, and there is no law or rule by which courts of equity are required to enforce awards resulting from arbitration. At the same time they have many times worked to the material advantage of parties litigant and are looked on with favor by the courts.

The order of the Circuit Court of Pinellas County is affirmed.

WHITFIELD, P. J., AND WEST, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.