PAUL BRINSON, as Administrator, of the Estate of Minerva A. Brinson, deceased, PAUL BRINSON, *et al.,* v. B. D. HERLONG.

164 So. 137.

Opinion Filed November 4, 1935.

506

A. P. *Rivers,* for Appellee.

Buford, J.—The appeal brings for review a final decree of foreclosure in a mortgage foreclosure suit.

The disposition of the case here depends on only one point, if that be decided adversely to appellant, which is this: Was there substantial evidence to support the decree?

It is contended by the appellant that by oral agreement for valuable consideration the mortgagee agreed to extend the maturity of the debt, the payment of which the mortgage was given to secure.

There is ample substantial evidence to support a finding that no agreement was made for an extension of the maturity date of the obligation. Aside from this, neither the pleadings nor the proof allege sufficient facts to show a valuable consideration for such agreement, if the agreement in fact had been made.

It is alleged that the extension agreement was made in consideration of the mortgagor, at the due date of the obligation, paying the interest then due and the sum of $200.00 on principal. This would constitute no valuable consideration for extension of maturity, as it was only payment to mortgagee of a part of what he was then entitled to have from the mortgagor. An agreement based on such consideration is not binding. In Williams v. Peninsular Grocery Co., 73 Fla. 937, 75 Sou. 517, it was said:

"The tenth amended plea set up an agreement for 'some good or valuable' consideration unknown between the plain-

tiff and one of the endorsers, not the maker, for an extension of the time of payment of the note. According to the plea the agreement was made between the payee and one of the endorsers, at the time of the note's maturity, and upon a good or valuable consideration. It is not definitely averred in the decree that the indorser with whom the agreement was made was the first intermediate or last indorser, or whether the three indorsers whose names appear on the back of the note indorsed the same jointly. Therefore testing the plea by its weakest averment, that is to say, testing it by the most unfavorable construction that may be placed on its averments, it presents this question: 'Does an agreement based on a good consideration as distinguished from a valuable one between the payee and the last indorser to which the maker was not a party made upon the maturity of the note when the liability of all the endorsers had become fixed by dishonor, for an extension of time for the payment of the note, release any one or all of the other endorsers?' Under Section 3042 of the General Statutes an endorser of a negotiable instrument is discharged by any agreement binding upon the holder to extend the time of payment, unless made with the endorser's assent, or unless the right of recourse against him is reserved. An indorser has the right to have the engagement of the principal debtor preserved without variation in its terms. Upon maturity of the note he may make payment and be subrogated to the holder's place and proceed at once against the principal debtor to enforce the payment. Any extension by the holder, therefore, granted to the maker upon a valuable consideration without the consent of the indorser, deprives him of this right. The effect of such an extension is to make a new and different obligation between maker and holder to which the indorser is not a party. The new contract is

substituted for the old. He is said to be discharged. The fact is the parties have made a new agreement to which the indorser is not a party, and have substituted it for the old. The statute provides that the agreement must be binding upon the holder, therefore, the contract must be supported by a valid consideration. See Cary v. White, 52 N. Y. 138; Wilson v. Powers, 130 Mass. 127; Hunt v. Knox, 34 Miss. 655; Rumberger v. Golden, 99 Pa. St. 34; Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 29 S. W. Rep. 646; 30 S. W. Rep. 430; McLemore v. Powell, 12 Wheat (U. S.) 554; 7 Cyc. p. 731; 3 R. C. L., p. 1278. The plea, however, avers that the consideration was good, as distinguished from a valuable one. It averred that the agreement was upon some 'good or valuable consideration.' What the pleader had in mind it is difficult to perceive, unless he meant to convey the idea that the extension of time for the payment of the note was granted gratuitously by the holder, without anything of value paid or promised by the indorser. The president or executive officer of a corporation is quite capable of entertaining a feeling or sentiment like gratitude, even if the corporate entity is not, and as corporations can act only through their officers, the plea does not exclude the idea that the extension of time was granted to one of the indorsers for a consideration which in law would be insufficient to support the agreement. See 8 C. J. 241; Easton v. Pratchett, 1 C. M. & R. P. 798; Sullivan v. Sullivan, 122 Ky. 707, 92 S. W. Rep. 966; 7 L. R. A. (N. S.) 156; Richardson v. Richardson, 148 Ill. 563, 36 N. E. Rep. 608, 26 L. R. A. 305. The use of the word 'good' in the plea as descriptive of the consideration introduced an element of uncertainty; because if the extension was granted gratuitously, that is to say, for some reason which answers to the description of what is known as 'good

consideration,' the agreement would not be binding, and the plea therefore bad."

So, the decree should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL and DAVIS, J. J., concur.